UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

EZEKIEL COOPER,                        )
                                       )
                 Petitioner,           )
                                       )
        v.                             )        CAUSE NO. 3:17-CV-595-PPS-MGG
                                       )
WARDEN,                                )
                                       )
                 Respondent.           )

OPINION AND ORDER

Ezekiel Cooper, a prisoner without a lawyer, filed a habeas corpus petition

challenging two related disciplinary proceedings—cases ISP 17-05-263 and ISP 17-05-

264—held on May 24, 2017.  ECF 1 at 1.  The petitions stem from Sergeant Everett's

discovery of two smart phones hidden inside a prison water fountain and the

investigation of the contents of the phones.  ECF 5-1 at 1, 5-7 at 1, 7-1 at 3.  A

confidential report of the internal affairs investigation along with a comprehensive

extraction report of the search results of each phone were compiled by prison officials.

ECF 7-1, 7-2.  The search of the phones showed that one of the phones had been used by

Cooper and shared with another offender.  ECF 5-1 at 1, 5-7 at 1, 7-1 at 1-4.  A text

message found on the phone indicated Cooper and the other offender were involved in

trafficking contraband into the prison.  ECF 5-1 at 1, 7-1 at 1-2, 4.

In case ISP 17-05-263, Cooper was found guilty of conspiracy to traffic in

violation of Indiana Department of Correction (IDOC) policies A-111/113.  ECF 5-4 at 1.

He was sanctioned with the loss of 90 days earned credit time and a one-step demotion in credit class. *Id.* In case ISP 17-05-264, Cooper was found guilty of using and possessing a cell phone in violation of IDOC offense A-121. ECF 5-10 at 1. He was sanctioned with the loss of 60 days earned credit time and a suspended one-step demotion in credit class. *Id.*

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass Corr Inst. v. Hill*, 472 U.S. 445, 455 (1985).

In the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Even a "meager" amount of evidence is enough to support a finding of guilty. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). Review of that decision by this court is limited. "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine

whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

On May 17, 2017, Investigator Dustin wrote a conduct report in case ISP 17-05-263, charging Cooper with violating offenses A-111/113. ECF 5-1 at 1. Specifically, IDOC offense A-111 prohibits inmates from "[a]ttempting or conspiring or aiding and abetting with another to commit any Class A offense." Indiana Department of Correction, Adult Disciplinary Process: Appendix I. http://www.in.gov/idoc/files/ 02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf. The Disciplinary Code for Adult Offenders defines "conspiracy" as "[t]wo (2) or more offenders or other persons planning or agreeing to commit acts which are prohibited by Department or facility rule, procedure or directive." Disciplinary Code for Adult Offenders. http://www.in. gov/idoc/files/02-04-101_The_Disciplinary_Code_for_Adult_Offenders_6-1-2015.pdf. IDOC offense A-113 prohibits inmates from "[e]ngaging in trafficking (as defined in IC 35-44.1-3-5) with anyone who is not an offender residing in the same facility." Appendix I, *supra*. And "[a] person who, without the prior authorization of the person in charge of a penal facility . . . , knowingly or intentionally delivers . . . an article to an inmate . . . of the facility . . . commits trafficking with an inmate, a Class A misdemeanor." Ind. Code § 35-44.1-3-5(b)(1),(3).

The Conduct Report in ISP 17-05-263 charged Cooper as follows:

On 03/22/2017, during a search of W1 water fountain Sergeant Everett located 2 Smart Phones hidden inside. The phones were confiscated and submitted into evidence.

On 05/12/2017, upon downloading the Optimus Zone 3 LG phone; it was found that Offender Cooper #139233 has used the cell phone[;] multiple phone calls and emails were made from the phone that were identified to be from Offender Cooper. A [sic] text messages that were sent to former Aramark Supervisor Josh Davis 219-878-3063 contained a Western Union money transfer to Josh Davis from Rita Larkin (Offender Cooper's contact). A[n]other Text message stated, "Working on that four I should have for you tomo[r]row. But [n]eed some Brown cannot be dry until the weekend . . . . the market is dry." also to Josh Davis.

ECF 5-1 at 1.

That same day, on May 17, 2017, Investigator Dustin wrote a second conduct report in case ISP 17-05-264, charging Cooper with violating offense A-121. ECF 5-7 at 1. Specifically, IDOC offense A-121 prohibits an inmate from "[u]nauthorized use or possession of any cellular telephone or other wireless or cellular communications device." Appendix I, *supra*. Furthermore, the Conduct Report in case ISP 17-05-264 charged Cooper as follows:

On 03/22/2017, during a search of W1 water fountain Sergeant Everett located 2 Smart Phones hidden inside. The phones were confiscated and submitted into evidence.

On 05/12/2017, upon downloading the Optimus Zone 3 LG phone; it was found that Offender Cooper #139233 has used the cell phone[;] multiple phone calls and emails were made from the phone that were identified to be from Offender Cooper. Phone calls made to 574-343-8388, Charlene Murray is listed under Offender Cooper's GTL approved list. (Mrs. Murray is only in contact with Offender Cooper at ISO.) Offender Cooper has sent multiple text messages to Mrs. Murray as well. Offender Cooper was asked to provide an interview and he refused.

ECF 5-7 at 1.

4

As an initial matter, the court's review of the record indicates there was sufficient evidence for the hearing officer to find Cooper guilty of the charged offenses: conspiring to traffic and using and possessing a cell phone. Indeed, a conduct report alone can be enough to support a finding of guilt. *McPherson*, 188 F.3d at 786. Such is the case here. In this case, the two conduct reports stem from an extensive internal affairs investigation, which details Cooper's unauthorized use of a smart phone and his efforts to engage in trafficking activities. ECF 5-1 at 1, 5-7 at 1. Investigator Dustin documented Cooper's use of the phone by the multiple calls, email, and text messages he sent to others outside the prison. *Id.* What's more, prison investigators were able to identify the multiple calls and messages on the smart phone as originating from Cooper himself. *Id.* And in case #ISP 17-05-264, Cooper made a number of phone calls and sent text messages to Charlene Murray, at 574-343-8388, who is listed on Cooper's GTL approved list, and is not listed on any other offender's GTL list at the Indiana State Prison's minimum security unit where Cooper is housed. ECF 5-7 at 1.

In addition to Cooper's unauthorized use and possession of the smart phone, the text messages contained on the phone provided evidence of Cooper's attempt to traffic contraband into the prison. As Investigator Dustin documented in the conduct report for case #ISP 17-05-263 — Cooper sent a text message to former Aramark Supervisor Josh Davis, at 219-878-3063, which contained a Western Union money transfer from one of Cooper's approved contacts, Rita Larkin. ECF 5-1 at 1. In another text message Cooper sent to Larkin, he stated he was "Working on that four I should have for you

5

tomo[r]row.  But [n]eed  some Brown cannot be dry until the weekend . . . . the market

is dry."  *Id*.  Cooper also sent this text message to Davis.  *Id*.  Given Investigator Dustin's

detailed conduct reports stemming from the internal affairs investigation which links

Cooper to conspiring to traffic contraband into the prison through the use of a smart

phone, there was more than "some evidence" for the hearing officer to find Cooper

guilty of violating offenses A-111, A-113, and A-121.  Therefore, the DHO's finding was

neither arbitrary nor unreasonable in light of the facts presented in this case.

Nevertheless, Cooper argues there are four grounds which entitle him to habeas

corpus relief.  ECF 1 at 2-3.  In one ground of his petition, he asserts his due process

rights were violated because he was denied the right to present evidence in his defense.

*Id*.  He claims that the hearing officer improperly denied his request to review the

internal affairs investigation file because the file purportedly contained confidential

information that could not be released to him.  ECF 1 at 2-3, 5-4 at 1, 5-10 at 1.  While

Cooper had a right to request evidence in his defense, *see Wolff*, 418 U.S. at 566, he did

not necessarily have a right to personally review that evidence.  *See White v. Ind. Parole

Bd.*, 266 F.3d 759, 767 (7th Cir. 2001) ("prison disciplinary boards are entitled to receive,

and act on, information that is withheld from the prisoner and the public . . . ").  Here,

Cooper did not have a right to review the internal affairs file because the release of the

file would have given Cooper and other offenders crucial, sensitive information about

the details of the investigation as well as insight into the surveillance techniques used

by investigators to detect and combat trafficking activities in the prison.  In other

words, the disclosure of the contents of the file could aid other offenders in devising schemes to circumvent forensic searches of smart phones in future trafficking cases. Furthermore, the court has reviewed the file and finds the hearing officer did not err in determining that it posed a security threat to release this information to Cooper.

Nor does the internal affairs file contain any exculpatory evidence. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires production of "exculpatory" evidence). Exculpatory in this context means evidence which "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). While Cooper has a right to present relevant, exculpatory evidence in his defense, the internal affairs file, as discussed above, is made up of incriminating — not exculpatory — evidence. Furthermore, because the DHO, who presided over Cooper's hearings, thoroughly reviewed and considered the evidence contained in the file there was no violation of his due process rights. *White*, 266 F.3d at 767. As stated, the court has reviewed the internal affairs file and finds it does not contain any exculpatory evidence. *Jeffries v. Neal*, 737 Fed. App'x 791, 793 (7th Cir. 2018) ("our review of the internal-affairs file confirms that it contains no evidence contradicting the hearing officer's conclusion that Jeffries trafficked drugs.").

In another ground, Cooper asserts his due process rights were violated because he was denied a fair and impartial hearing. ECF 1 at 3. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the

constitutional standard for improper bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decision-maker in the case. *Id*. However, due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the events underlying the charge. *Id*.

The court's review of the record shows there is no evidence to support Cooper's contention that the hearing officer was biased against him or that he did not have an impartial hearing. Cooper claims he was subjected to an unfair hearing because his request to review the confidential materials contained in the internal affairs file was denied. ECF 1 at 3. But he has not shown that the hearing officer was directly or otherwise substantially involved in the factual events underlying the disciplinary charges, or the investigation of the incident. *Piggie*, 342 F.3d at 666. The mere fact Cooper was denied access to the file does not establish that she was in some way biased against him. Instead, as discussed, the hearing officer determined the release of the file posed a security threat and could aid offenders in circumventing prison surveillance practices in future trafficking cases. Therefore, this ground does not identify a basis for habeas corpus relief.

In another ground of his petition, Cooper appears to argue that his due process rights were violated because he did not receive 24-hours notice of the charges against him. ECF 1 at 2. Prisoners are entitled to notice of the factual allegations of the charges

against them.  *Wolff*, 418 U.S. at 563-64.  This requirement is met when the underlying basis of the charge is adequate to give the prisoner notice of the allegations against him. *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003).  Cooper's due process right to 24-hour notice of the charges against him was satisfied when he received his conduct reports on May 22, 2017, (ECF 5-1 at 1, 5-7 at 1), and his hearings were held on May 24, 2017.  ECF 5-4 at 1, 5-10 at 1.  And here the detailed conduct reports informed Cooper of the names and numbers of the charges and provided sufficient facts to apprise him of both the cell phone possession charge and conspiracy to traffic charge.  ECF 5-1 at 1, 5-7 at 1.  Because Cooper was properly notified of the charges and underlying facts, and had all of the information he needed to defend against these charges, his due process rights were not violated.  *Hanks*, 326 F.3d at 911.  Therefore, Cooper is not entitled to habeas corpus relief on this ground either.

In the final ground of his petition, Cooper argues his due process rights were violated because he was not given "[a] written copy of [the] findings of fact" in his case. ECF 1 at 2.  Due process requires that a fact-finder provide a written statement of the evidence relied on and the reasons for the disciplinary action.  *Wolff*, 418 U.S. at 564-65. The written statement requirement is "not onerous," and to satisfy due process "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision."  *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007).  Here, the reports from the two disciplinary hearings show that the hearing officer considered the staff reports and internal affairs file.  ECF 5-4 at 1, 5-10 at 1.  While her statement is not lengthy, she

adequately identified the evidence she relied on in her decision, and it is clear she chose to credit the evidence collected and the conclusions reached by internal affairs investigators. Because the hearing officer's written statement satisfied the minimal requirements of due process, and she thoroughly considered all of the record evidence, this ground does not provide a basis for habeas corpus relief.

If Cooper wants to appeal this order, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed in forma pauperis on appeal because pursuant to 28 U.S.C. § 1915(a)(3) an appeal in this case could not be taken in good faith.

For these reasons, Ezekiel Cooper's petition for writ of habeas corpus is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED on January 11, 2019.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT